FILED BY_____ DJ ___D.C.

**Jul 26, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

21-CV-22703-BLOOM/ OTAZO-REYES

SAFETY NAILER LLC,

            Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

            Defendants.

---

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff SAFETY NAILER LLC, by and through its undersigned counsel, brings this complaint against defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto (collectively "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Safety Nailer LLC's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

### SUMMARY OF THE ACTION

1.    Plaintiff SAFETY NAILER LLC ("SNLLC") brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.

2.     Plaintiff SNLLC also brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq*.

3.     Plaintiff SNLLC also brings this action for willful patent infringement under 35 U.S.C. §271 committed in violation of the plaintiff's exclusive rights to make, use, offer to sell, or sell plaintiff's patented invention, within the United States or for importation into the United States any patented invention during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, and 285.

## SUBJECT MATTER JURISDICTION

4.     This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5.     This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

6.     This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

7.     Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet based e-commerce stores accessible in Florida and operating under their Seller IDs.

8.      Defendants are subject to personal jurisdiction in this district because have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of infringing goods into Florida and plaintiff's claims arise out of those activities.

9.      Alternatively, defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## **VENUE**

10.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

11.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 since defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

12.      Venue is proper in this court pursuant to 28 U.S.C. §1400(b) because defendants or their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

13.      Venue is proper in this court pursuant to 28 U.S.C. §1400(b) because defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## THE PLAINTIFF

14.     SNLLC is a Virginia limited liability company with its principal place of business in Yorktown, Virginia.

15.     SNLLC is a woman and disabled veteran-owned company that designs, patents and manufactures innovative tools.

16.     SNLLC was featured on Shark Tank in March of 2020, This Old House in 2020, NBC Good Morning America in 2018, Ace Hardware Show Review in 2019, and more.

17.     SNLLC's products are sold through Amazon Fulfillment, its own website, www.safetynailer.com, Ace Hardware, The Grommet, Starcrest and Princess Anne Auto.

18.     SNLLC owns the trademark, copyrights and patent described below that are the subject of this action.

19.     Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

20.     Like many other intellectual property rights owners, plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as defendants herein.

21.     Plaintiff is harmed, the consuming public is duped and confused, and the defendants earn substantial profits in connection with the infringing conduct.

22.     In order to combat the harm caused by the combined actions of defendants and others engaging in similar infringing conduct, plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

23.     The recent explosion of infringement over the Internet has created an environment that requires companies like plaintiff to expend significant time and money across a wide

spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of plaintiff's intellectual property rights, including consumer confusion and the erosion of plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.      PLAINTIFF'S TRADEMARK RIGHTS

24.      Plaintiff created and sells products under the federally registered trademark SAFETY NAILER that function as holders for fasteners, and in particular a holder for holding nails while shielding the users fingers from being struck by a hammer.

25.      SNLLC is the owner of all rights in and to the SAFETY NAILER trademark, U.S. Reg. No. 5,544,356 for "Hand tools, namely, clamps" in International Class 8 registered August 21, 2018 and shown in Exhibit 1, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "SNLLC Mark").

26.      The SAFETY NAILER trademark consists of the wording "SAFETY NAILER" in capital letters in stylized form, and was first used on October 15, 2012, and first used in commerce on October 1, 2017.

27.      Plaintiff is the owner of all rights in and to the trademark **SAFETY NAILER** identified in Exhibit 1, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "SAFETY NAILER Mark").

28.      The SAFETY NAILER Mark is used in connection with the manufacture and distribution of plaintiff's high-quality goods. A true and correct copy of the Certificate of Registration for the SAFETY NAILER Mark is attached hereto as Exhibit 1.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

29.     Plaintiff sells two versions of the SAFETY NAILER product, the Framing Nailer version and the Finish Nailer version. Both versions are shown below.



**SAFETY NAILER**
**Framing Nailer**

**SAFETY NAILER**
**Finish Nailer**

30.     The SAFETY NAILER Mark has been used in interstate commerce to identify and distinguish plaintiff's high-quality goods for an extended period of time.

31.     The SAFETY NAILER Mark has been used by plaintiff long prior in time to defendants' use of copies of those trademarks.

32.     The SAFETY NAILER Mark has never been assigned or licensed to any of the defendants.

33.     The SAFETY NAILER Mark is a symbol of plaintiff's quality goods, reputation and goodwill and has never been abandoned.

34.     Plaintiff has carefully monitored and policed the use of the SAFETY NAILER Mark.

35.     The SAFETY NAILER Mark is well known and famous and has been for many years.

36.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the SAFETY NAILER Mark.

37.     Plaintiff has extensively used, advertised, and promoted the SAFETY NAILER Mark in the United States in association with the sale of high-quality goods.

38.     Plaintiff has spent substantial resources promoting the SAFETY NAILER Mark and products bearing the SAFETY NAILER Mark.

39.     In recent years, sales of products bearing the SAFETY NAILER Mark have exceeded a million dollars within the United States.

40.     As a result of plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the SAFETY NAILER Mark as being high-quality goods sponsored and approved by plaintiff.

41.     Accordingly, the SAFETY NAILER Mark has achieved secondary meaning as identifiers of high-quality goods.

42.     The SAFETY NAILER Mark qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

43.     Genuine goods bearing the SAFETY NAILER Mark are widely legitimately advertised and promoted by plaintiff, its authorized distributors, and unrelated third parties via the Internet.

44.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to plaintiff's overall marketing and consumer education efforts.

45.     Thus, plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

46.     Plaintiff's SEO strategies allow plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with plaintiff's products and the goods marked with the SAFETY NAILER Mark.

## B.     PLAINTIFF'S COPYRIGHT RIGHTS

47.     Plaintiff advertises, markets, promotes and sells its SAFETY NAILER branded product using photographs that are protected by copyright and registered with the Copyright Office.

48.     Plaintiff duly registered its photographs under the following registration numbers VA 2-252-882 and VA 2-252-876. True and correct copies of plaintiff's copyright registrations and the photographs they apply to are attached hereto as Exhibit 2.

49.     Genuine SAFETY NAILER goods are widely legitimately advertised and promoted by plaintiff and its authorized distributors using plaintiff's copyrighted photographs.

50.     Plaintiff has never granted authorization to anyone to advertise, market or promote unauthorized goods using plaintiff's copyrighted photographs.

## C.     PLAINTIFF'S PATENT RIGHTS

51.     Plaintiff owns U.S. Patent No. US 8,806,983 (the '983 Patent) entitled "Holder For Fasteners". A true and correct copy of the '983 Patent is attached hereto as Exhibit 3.

52.     The '938 Patent relates to holder for fasteners, and in particular to a holder for holding nails while shielding the users fingers from being struck by a hammer.

53.     Plaintiff's '938 Patent has not expired, is valid, and all maintenance fees have been paid and are current.

54.     Plaintiff marks its SAFETY NAILER products, the Framing Nailer version and the Finish Nailer version, with the '938 Patent number as shown below.



55.     Plaintiff has never granted authorization to anyone to import, make, use or sell unauthorized goods using plaintiff's '938 Patent.

## DEFENDANTS

56.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

57.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

58.     Upon information and belief, defendants have registered, established or purchased, and maintained their Seller IDs.

59.     Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

60.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

61.     Defendants directly engage in unfair competition with plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to plaintiff.

62.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

63.     Upon information and belief, defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller ID.

64.     Upon information and belief, many defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

65.     Upon information and belief, defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and

infringements of plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

66.     Defendants use their Internet-based businesses to infringe the intellectual property rights of plaintiff and others.

67.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of plaintiff's intellectual property rights are essential components of defendants' online activities and are one of the means by which defendants further their counterfeiting and infringement scheme and cause harm to plaintiff.

68.     Some of the defendants use individual seller store names containing the SAFETY NAILER Mark, and these store names are indexed on search engines and compete directly with plaintiff for space in search results.

69.      The appearance of defendants' individual seller stores in search engine results undermines plaintiff's efforts to educate consumers about the value of products sold under the SAFETY NAILER Mark.

70.     Defendants are using counterfeits and infringements of plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of plaintiff's legitimate marketplace and intellectual property rights at plaintiff's expense.

71.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with plaintiff's economic interests in the state of Florida and causing plaintiff harm and damage within this jurisdiction.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

72.     The natural and intended byproduct of defendants' actions is the erosion and destruction of the goodwill associated with plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

73.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

74.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of plaintiff's products in interstate commerce that are counterfeits and infringements of plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

75.     At least one defendant is also using the listing and associated image identified by the Amazon Standard Identification Number ("ASIN") on Schedule "A" annexed hereto.

76.     Specifically, upon information and belief, defendants are using the SAFETY NAILER Mark to initially attract online customers and drive them to defendants' e-commerce stores operating under the Seller IDs.

77.     Defendants are using identical copies of the SAFETY NAILER Mark for different quality goods.

78.     Plaintiff has used the SAFETY NAILER Mark extensively and continuously before defendants began offering counterfeit and confusingly similar imitations of plaintiff's merchandise.

79.     Upon information and belief, defendants' Counterfeit Goods are of a quality substantially different than that of plaintiff's genuine goods.

80.     Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by plaintiff, despite defendants' knowledge that they are without authority to use the SAFETY NAILER Mark.

81.     The net effect of defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of defendants' goods offered for sale on defendants' e-commerce stores are genuine goods originating from, associated with, and approved by plaintiff.

82.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

83.     In so advertising their stores and products, Defendants improperly and unlawfully use one or more of the SAFETY NAILER Mark without plaintiff's permission.

84.     As part of their overall infringement and counterfeiting scheme, most defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the SAFETY NAILER Mark.

85.     Specifically, defendants are using counterfeits and infringements of one or more of the SAFETY NAILER Mark in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both plaintiff's goods and goods sold by plaintiff's competitors online.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

86.     By their actions, defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for plaintiff's genuine goods.

87.     Defendants are causing individual, concurrent and indivisible harm to plaintiff and the consuming public by (i) depriving plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the SAFETY NAILER Mark, and (iii) increasing plaintiff's overall cost to market its goods and educate consumers via the Internet.

88.     Upon information and belief, defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

89.     As a result, defendants are defrauding plaintiff and the consuming public for defendants' own benefit.

90.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of plaintiff's ownership of the SAFETY NAILER Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

91.     Defendants' use of the SAFETY NAILER Mark, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without plaintiff's consent or authorization.

92.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to plaintiff's rights for the purpose of trading on plaintiff's goodwill and reputation.

93.     If defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, plaintiff and the consuming public will continue to be harmed.

94.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

95.     Moreover, defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between plaintiff's genuine goods and defendants' Counterfeit Goods, which there is not.

96.     Upon information and belief, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by defendants to accept, receive, and deposit profits from defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used and/or controlled by them.

97.     Further, upon information and belief, defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to plaintiff.

98.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of defendants' unauthorized and infringing activities and their wrongful use of plaintiff's intellectual property rights.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

99.     If defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, plaintiff and the consuming public will continue to be harmed.

100.     The harm and damages sustained by plaintiff have been directly and proximately caused by defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

101.     Defendants have sold their infringing products in competition directly with plaintiff's genuine products.

102.     Plaintiff should not have any competition from defendants because plaintiff never authorized defendants to use plaintiff's copyrights, trademarks and patent.

103.     Plaintiff has suffered price erosion as a result of defendants' infringement.

104.     When our products were first introduced, they were sold at the retail price of $9.99.

105.     Defendants sell their products that infringe plaintiff's intellectual property rights for much less than plaintiff.

106.     As a result of defendants' sale of their counterfeit and infringing products, plaintiff was forced to lower its price to $8.99.

107.     Plaintiff has continued to have difficulty selling its authentic products online because of the price pressure asserted by the defendants' sale of counterfeit and infringing products.

108.     Plaintiff has been unable to restore the higher price point before it was able to sell at prior to the infringements and counterfeiting by defendants.

109.     Plaintiff has suffered extreme pressure for further price erosion.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

110.    Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

111.    Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.    This is an action for trademark counterfeiting and infringement against defendants based on their use of counterfeit and confusingly similar imitations of the SAFETY NAILER Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

113.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the SAFETY NAILER Mark.

114.    Defendants are continuously infringing and inducing others to infringe the SAFETY NAILER Mark by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

115.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of defendants' Counterfeit Goods.

116.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to plaintiff and are unjustly enriching defendants with profits at plaintiff's expense.

117.    Defendants' above-described illegal actions constitute counterfeiting and infringement of the SAFETY NAILER Mark in violation of plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

118.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to defendants' above described activities if defendants are not preliminarily and permanently enjoined.

119.    If not preliminarily and permanently enjoined, defendants will continue to wrongfully profit from their illegal activities.

### COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

120.    Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

121.    Upon information and belief, defendants' Counterfeit Goods bearing, offered for sale and sold using copies of at least one of the SAFETY NAILER Mark has been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

122.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the SAFETY NAILER Mark is virtually identical in appearance to plaintiff's genuine goods.

123.    Defendants' Counterfeit Goods are different in quality from plaintiff's goods, and are of much lower quality.

124.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

125.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to plaintiff's detriment.

126.    Defendants have authorized infringing uses of the SAFETY NAILER Mark in defendants' advertisement and promotion of their counterfeit and infringing branded goods.

127.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

128.    Defendants are using counterfeits and infringements of the SAFETY NAILER Mark in order to unfairly compete with plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving plaintiff of a valuable marketing and educational tool which would otherwise be available to plaintiff and reducing the visibility of plaintiff's genuine goods on the internet and across social media platforms.

129.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

130.    Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by defendants' concurrent conduct.

131.    Absent an entry of an injunction by this Court, defendants will continue to wrongfully reap profits and plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – UNFAIR COMPETITION

132.    Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

133.    This is an action against defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to the SAFETY NAILER Mark in violation of Florida's common law of unfair competition.

134.    Defendants' activities complained of herein constitute unfair methods of competition.

135.    Specifically, defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the SAFETY NAILER Mark.

136.    Defendants are also using counterfeits and infringements of the SAFETY NAILER Mark to unfairly compete with plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

137.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of defendants' e-commerce stores as a whole and all products sold therein by their use of the SAFETY NAILER Mark.

138.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of defendants' actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

139.    Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

140.     This is an action for common law trademark infringement against defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing at least one or more of the SAFETY NAILER Mark.

141.    Plaintiff is the owner of all common law rights in and to the SAFETY NAILER Mark.

142.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of at least one of the SAFETY NAILER Mark.

143.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the SAFETY NAILER Mark.

144.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT

145.    Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

146.    Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

147.    Pursuant to 17 U.S.C. § 411(a), plaintiff registered its copyrights for its advertising and marketing photographs.

148.    Defendants directly infringed one or more of plaintiff's exclusive rights in its copyright registered advertising and marketing photographs under 17 U.S.C. §106.

149.    Defendants copied, displayed, and distributed plaintiff's copyrighted works and/or prepared derivative works based upon plaintiff's copyrighted works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

150.    Defendants' conduct constitutes willful and direct copyright infringement of plaintiff's copyrighted works.

151.     Defendants profited from the direct infringement of the exclusive rights of plaintiff in the works at issue in this case under the Copyright Act.

152.     Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

153.     On information and belief, there is a business practice of infringement by defendants.

154.     On information and belief, defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

155.     Plaintiff has been damaged by the infringement.

156.     The harm to plaintiff is irreparable.

157.     Plaintiff is entitled to temporary and permanent injunctive relief from defendants' willful infringement.

158.     Plaintiff is entitled to recover its actual damages and/or statutory damages, at its election.

159.     Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

## COUNT VI – PATENT INFRINGEMENT

160.     Plaintiff incorporates the allegations of paragraphs 1 through 110 of this Complaint as if fully set forth herein.

161.     Plaintiff owns U.S. Patent No. US 8,806,983 entitled "Holder For Fasteners" that covers its SAFETY NAILER product.

162.     Defendants have infringed and continue to infringe the '983 Patent either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. §

271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under the SAFETY NAILER marks.

163. Defendants infringing and counterfeit products sold under the SAFETY NAILER marks are the same in all material respects.

164. Defendants' infringement, contributory infringement and/or inducement to infringe has injured plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

165. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because defendants have notice of or knew of the '983 Patent and have nonetheless injured and will continue to injure plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the '983 Patent.

WHEREFORE, plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against defendants as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, 35 U.S.C. § 283, and Federal Rule of Civil Procedure 65 enjoining defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods that infringe on plaintiff's rights under trademark, copyright and patent; from infringing, counterfeiting, or diluting the SAFETY NAILER Mark; from using the SAFETY NAILER Mark, or any mark or design similar thereto, in connection

with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of defendants as being sponsored by, authorized by, endorsed by, or in any way associated with plaintiff; from falsely representing themselves as being connected with plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the SAFETY NAILER Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent defendants' goods as being those of plaintiff, or in any way endorsed by plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of plaintiff's name or trademarks and from otherwise unfairly competing with plaintiff; from copying, displaying, distributing or creating derivative works of plaintiff's registered copyrights; from importing, selling, offering for sale, or using products that infringe plaintiff's patent.

b.    Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, defendants in connection with the sale and

distribution of non-genuine goods bearing and/or using counterfeits of the SAFETY

NAILER Mark, that copy, display, distribute or use derivative works of plaintiff's

registered copyrights, or from importing, selling, offering for sale, or using products that

infringe plaintiff's patent.

      c.     Entry of an order authorizing seizure, impoundment and/or destruction of

all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

      d.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

the Court's inherent authority that, upon plaintiff's request, the applicable governing

Internet marketplace website operators and/or administrators for the Seller IDs who are

provided with notice of an injunction issued by this Court disable and/or cease facilitating

access to the Seller IDs and any other alias seller identification names being used and/or

controlled by defendants to engage in the business of marketing, offering to sell, and/or

selling goods bearing counterfeits and infringements of the SAFETY NAILER Mark.

      e.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

this Court's inherent authority that, upon plaintiff's request, any messaging service and

Internet marketplace website operators, administrators, registrar and/or top level domain

(TLD) Registry for the Seller IDs who are provided with notice of an injunction issued by

this Court identify any e-mail address known to be associated with defendants' respective

Seller IDs.

      f.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

this Court's inherent authority that upon plaintiff's request, any Internet marketplace

website operators and/or administrators who are provided with notice of an injunction

issued by this Court permanently remove from the multiple platforms, which include,

inter alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of the SAFETY NAILER Mark via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the SAFETY NAILER Mark associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the SAFETY NAILER Mark.

g.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon plaintiff's request, defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the SAFETY NAILER Mark in its inventory, possession, custody, or control, turn over documents reflecting the total number of infringing goods manufactured, distributed, sold and still remaining in inventory including, but not limited to, production reports, shipping invoices, bills of lading, sales invoices, and inventory-on-hand reports, and surrender those goods to plaintiff.

h.      Entry of an Order requiring defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics,

or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

i.     Entry of an Order requiring defendants to account to and pay plaintiff for all profits and damages resulting from defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to plaintiff be trebled, as provided for under 15 U.S.C. § 1117, or, at plaintiff's election with respect to Count I, that plaintiff be awarded statutory damages from each defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

j.     Entry of an Order requiring defendants to account to and pay plaintiff for all profits and damages resulting from defendants' copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which any one defendant is liable individually, or for which defendants are liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the court considers just pursuant to 17 U.S. C. §504(c)(1), or to the extent the court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

k.     Entry of an Order requiring defendants to account to and pay plaintiff damages for patent infringement in an amount to be determined by the court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

l.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), 17 U.S.C. § 505, and 35 U.S.C. § 285 of plaintiff's costs and reasonable attorneys' fees and

investigative fees, associated with bringing this action, including the cost of corrective advertising.

        m.      Entry of an Order that, upon plaintiff's request, defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

        n.      Entry of an award of pre-judgment interest on the judgment amount.

        o.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: July 26, 2021            Respectfully submitted,

                             */s/  Joel B. Rothman*_____
                             JOEL B. ROTHMAN
                             Florida Bar Number: 98220
                             joel.rothman@sriplaw.com
                             CRAIG A. WIRTH
                             Florida Bar Number: 125322
                             craig.wirth@sriplaw.com

                             **SRIPLAW**
                             21301 Powerline Road
                             Suite 100
                             Boca Raton, FL 33433
                             561.404.4350 – Telephone

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

561.404.4353 – Facsimile

*Counsel for Plaintiff Safety Nailer LLC*